HODGES v. MOORE et al.    (No. 993.)

(Court of Civil Appeals of Texas. Amarillo. May 17, 1916.)

1. REFORMATION OF INSTRUMENTS  &#x25C9;&#x2014;16&mdash;NATURE.

A correction of mutual mistake in description of property in a conveyance does not create a new contract, but merely makes the written evidence of the contract speak the truth and conform to the intention of the parties.

[Ed. Note.&mdash;For other cases, see Reformation of Instruments, Cent. Dig. § 68; Dec. Dig. &#x25C9;&#x2014; 16.]

**2. DEEDS** ⊜⇒43—CONTENTS—AMENDMENT BY CORRECTION DEED.

Where a deed fails to properly describe the land conveyed, it may be corrected by the grantor giving a correction deed properly describing the property.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 59; Dec. Dig. ⊜⇒43.]

**3. EXECUTION** ⊜⇒115—LIEN—PROPERTY AFFECTED — PROPERTY TRANSFERRED — JUDGMENT CREDITOR WITH NOTICE.

A correction deed may be given by grantor when a levy has been made on the land before correction, if the creditor had notice of the rights of the original purchaser.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 257–265, 377; Dec. Dig. ⊜⇒ 115.]

**4. JUDGMENT** ⊜⇒682(1) — LIEN — PROPERTY TRANSFERRED.

The title of a grantee of land is not affected by subsequent judgment against his grantor.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1203; Dec. Dig. ⊜⇒682(1).]

**5. JUDGMENT** ⊜⇒96 — DEFAULT JUDGMENT— CONCLUSIVENESS AGAINST SURVIVING DEFENDANTS.

Rev. St. 1911, art. 7750, as to judgment of title on default without proof by plaintiff in trespass to try title, does not purport to prescribe the rights of defendants who do answer, and their rights are controlled by article 1937 as to answering and defaulting defendants.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 155–158; Dec. Dig. ⊜⇒96.]

**6. TRESPASS TO TRY TITLE** ⊜⇒44—QUESTIONS FOR JURY—RIGHT TO CORRECTION DEED.

In trespass to try title, the question whether a defendant had paid purchase money to another defendant to plaintiff's knowledge and was entitled to a correction deed, describing the land as against plaintiff and such other defendant, *held,* under the evidence, for the jury.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 66; Dec. Dig. ⊜⇒44.]

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Action by Ira T. Moore against A. L. Hodges and others. From a judgment for plaintiff, the named defendant appeals. Reversed and remanded.

Read, Lowrance & Bates, of Dallas, for appellant. D. W. Bowser, B. F. Ward, and Charlton & Charlton, all of Dallas, for appellees.

HUFF, C. J. Ira T. Moore instituted suit in the nature of trespass to try title against A. L. Hodges, C. H. Coyle, and W. S. Sanderson, and also sued S. L. Dale and W. L. Williams on their warranty, in the same action alleging that Hodges, Sanderson, and Coyle unlawfully entered into possession of lot 1, block 1, G. W. Laws addition to the city of Dallas, being a part of block 354, in the city of Dallas. Hodges answered by plea of general denial, plea of not guilty, 3, 5, and 10 years' statute of limitation. He alleges, also, that Sanderson conveyed the land to Coyle and Coyle to him, but through mistake of the party drawing the deeds, the lot was misdescribed, describing an entirely different lot to the one sued for, but in fact, Sander-

son sold the lot in question to Coyle and placed him in possession; that Coyle sold to Hodges, placing him in possession of the lot in question, but the deeds misdescribed the lot through a mutual mistake. Thereafter, these original deeds were corrected by correction deeds, properly describing the lot. He alleges that the lot in question was the lot so purchased and paid for and intended to be conveyed by Sanderson to Coyle, and from Coyle to Hodges. He prayed for judgment correcting the deeds, in accordance with the intention of the parties. The petition was filed January 26, 1914. Hodges, by his original answer, admitted that the plaintiff had title to the lot unless defeated by the statute of limitation. Sanderson executed a deed to Coyle the 20th day of April, 1906, but this deed does not describe the land in controversy. On September 12, 1914, Sanderson executed his deed to Coyle, describing the land in question, and reciting therein that the purpose of the deed was to correct the deed above set out in the description of the property, and in the last deed correctly described the land in question. There is a deed in the record from Coyle to Hodges dated January 23, 1914, but not acknowledged for record until March 7, 1914. The evidence shows that Hodges bought the land from Coyle some time in 1913, and took a deed thereto, but did not record it, and went into possession of the land at that time, and afterwards erected a rent house on the property. For the purpose of this opinion, without intending absolute accuracy, we state the evidence shows that Sanderson took possession of this lot some 24 years before suit was filed, fenced and occupied it by tenant during those years, receiving the rent therefor; that Coyle went into possession when he purchased, as did also Hodges when he purchased. On September 4, 1914, an interlocutory judgment was entered by default against Sanderson, as of May 7, 1914, reciting simply that plaintiff have an interlocutory judgment. On September 24, 1914, judgment was entered as of September 8, 1914, on Coyle's answer, disclaiming any interest in the property, reciting that plaintiff have an interlocutory judgment. Final judgment was entered March 18, 1915. On September 4, 1914, Coyle filed his answer to the effect that he did not own, or pretend to own, the lot in question, or any interest therein, and disclaimed all right, etc. The trial court instructed the jury to return a verdict for the plaintiff Moore, and for the defendants, S. L. Dale and W. L. Williams, and a verdict was returned in accordance therewith, upon which judgment was entered.

The 10 years statute was invoked in this case, and in so far as this record shows, established title by limitation to the property in question in Sanderson, which is conceded by the appellee, and, in fact, it is urged as a reason showing no title in fact vested in ap-

pellant. This is on the theory that the deed from Sanderson to Coyle and from Coyle to Hodges does not describe the land, and therefore under the statute of frauds the title to the land did not pass to Hodges. This, of course, is true if the deeds were alone relied upon. It is urged by appellees, under the rule, that a patent ambiguity, which renders the deed void as a conveyance of land, cannot be explained by parol testimony, citing several authorities to that point. The description in the deed is not an ambiguity at all appearing on the face of the deed. It simply described one piece of land when, as a matter of fact, another is claimed under it. The pleadings allege the lot in question was in fact purchased and paid for, but by mistake of the draftsman, the wrong lot was written into the deed. All the parties to the deed say this is the land actually sold, paid for, and intended to be conveyed. The petition prays for a correction of the deed in accordance with the intention of the parties.

[1-3] When a conveyance has been properly executed, a correction of the mutual mistake in the description of the property therein contained does not create a new contract, but merely makes the written evidence of the contract which had been legally executed speak the truth and conform to the intention of the parties in order that injustice and fraud may be prevented. Silliman v. Taylor, 35 Tex. Civ. App. 490, 80 S. W. 651. The above case is stronger than this: The deed therein described one lot when it was the purpose to give the lien on another, the separate property of the wife. The lien was foreclosed, the property sold and purchased at foreclosure sale. The purchaser thereat, brought suit to correct the deed so as to give the correct description. This, the court held, could be done, and the exercise of this power to require the correction of a married woman's deed to her separate property or homestead did not conflict with the Constitution, prescribing the manner in which such conveyances should be executed.

"The general rule that a court of equity will correct a mistake in the description of property in a deed, and make the instrument conform to the intention of the parties and evidence the real contract made by them, is too well settled to require citation of authority." Openshaw v. Rickmeyer, 45 Tex. Civ. App. 508, 102 S. W. 467; Avery v. Houston, 23 Tex. Civ. App. 353, 56 S. W. 210-212; Harry v. Hamilton, 154 S. W. 637.

It is the rule in this state, where a deed fails to properly describe the land conveyed, it may be corrected by the grantor giving a correction deed, properly describing the property, and this may be done when a levy has been made on the land before correction, if the creditor had notice of the rights of the original purchaser. Milby v. Regan, 16 Tex. Civ. App. 352, 41 S. W. 372.

[4] If Hodges purchased and paid for and received a deed conveying the interest of Sanderson and Coyle to the land, but by mutual mistake the wrong lot was described, he had a right to have corrected the deed so as to make it speak the truth. He could do this in court, or if the parties voluntarily corrected the deed, it would not be a new contract, but simply be correcting the writing of the original contract made. When Sanderson was sued, he had no interest, and had none when the default was taken. Coyle simply filed his plea that he had no title to the lot, and when he did so this was consistent with the facts adduced upon the trial. The title was in neither Sanderson nor Coyle. They had placed Hodges in possession of the right land under a deed which they mutually believed to convey it, but by mutual mistake, it did not. Before Sanderson executed his correction deed, a default was taken against him, and an interlocutory judgment entered. This is not a decree, adjudicating that the title was in him and not in Hodges. At most, it was a decree that as to the plaintiff, Sanderson could not in that suit set up any interest against the plaintiff. This did not affect Hodges' right to have the deed corrected, according to the contract and the truth of the matter. It was and is no estoppel as to Hodges; it did not adjudicate his rights, and could not affect him. His rights remained intact, unaffected by the nonaction of Sanderson. Atkinson v. Shelton, 160 S. W. 316; Boles v. Linthicum, 48 Tex. 220.

[5] Article 7750, R. C. S., simply dispenses with proof where the defendant in trespass to try title fails to answer and default is taken. It does not purport to prescribe the rights of a defendant who does answer in that suit. This will, we think, be controlled by article 1937, R. C. S. If Hodges had not been made a party, or if he had been dismissed from the suit, it would not be contended that a final judgment would have affected his rights to correct the deed. If there was a misdescription by mutual mistake in the deed, of which the appellees had notice, or facts which would have led to such knowledge, then they are not concerned in the matter of correction. Their rights will be determined by whether they are bona fide purchasers without notice, or whether the transaction was bona fide between Sanderson, Coyle, and Hodges. Of course, if there never was any conveyance out of Sanderson or Coyle into Hodges, a judgment, when final, would divest out of appellant, and vest appellee with title, but these are issues which, under the facts, must be determined by the jury from the facts in the case. Hodges, therefore, having answered, setting up his right, that he had the title of Sanderson and Coyle, had the right to have these questions adjudicated as to him. The default of Sanderson, or Coyle's answer that he had no title, did not estop Hodges, and the court, for that reason, should not have taken the case from the jury.

[6] In this case it is alleged there was a mistake in the description of the land. The

petition, however, should more specifically allege a mutual mistake; that the lot in question was actually bought and paid for, and that it was intended to be conveyed by the deeds, and that the description was thereafter corrected by new deeds. The evidence is positive by all the parties to the deeds that this is true. A judgment then against the vendor will not estop the vendee, who bona fide purchased the land. We believe Hodges could sue, even after judgment against them, to correct the deed and make it speak the truth. This was the prayer of the petition. The question whether, under the evidence, Hodges had a contract which vested him with title upon a condition precedent is a question which should be determined under the facts by the jury, and under appropriate instructions by the court as to the law applicable to the facts.

The trial court, we think, was in error in taking the case from the jury, and the case will therefore be reversed and remanded.

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.